See also D.C., 267 F.Supp. 562; 2 Cir., 360 F.2d 741.

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**S & P NATIONAL CORPORATION,** Smith-Palmer Machine Corporation, Southwest International Corporation, David M. Milton and Ralph E. Still, Defendants.

No. 66 Civ. 512.

United States District Court
S. D. New York.
May 9, 1968.

Richard V. Bandler, and Marvin E. Jacob, New York City, for S. E. C.

Shea, Gallop, Climenko & Gould, New York City, for corporate defendants,

Martin I. Shelton, New York City, of counsel.

George Zolotar, New York City, President of corporate defendants.

Orans, Elsen & Polstein, New York City, for principal creditors of S & P Nat. Corp., Sheldon H. Elsen and Lewis Shapiro, New York City, of counsel.

A. Logan Langwith, Gen. Counsel, New York City, Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., for Sterling Precision Corp., Stephen C. Shamberg, Chicago, Ill., of counsel.

## OPINION

THOMAS F. MURPHY, District Judge.

In Securities and Exchange Commission v. S & P National Corporation, et al., 273 F.Supp. 863 (S.D.N.Y.1967), the court approved a "Plan of Settlement and Reorganization" (the "settlement") whereby the issues in this case were resolved. The settlement effected an extensive subordination of insiders' debt and stock claims to the rights of the minority public stockholders of S & P National Corporation ("S & P"). The related consent judgment required the dissolution and liquidation of S & P and of its two wholly-owned subsidiaries and co-defendants, Smith-Palmer Machine Corporation and Southwest International Corporation. The three corporations had been registered as investment companies under the Investment Company Act of 1940.

The consent judgment required these registered investment companies to be dissolved and liquidated pursuant to a "Plan of Complete Liquidation and Dissolution" (the "dissolution plan") to be presented within 30 days after the making of an order revesting them with possession of their records and assets. It further provided that the dissolution plan be consummated within 60 days after approval by the court. The time to appeal from the order approving the settlement or from the consent judgment, assuming the latter were appealable by any non-consenting interested party, has expired.

By virtue of the subordination, certain calculated amounts of distribution of consolidated net assets were to be made available to the public stockholders of S & P. The amounts were $20.90 per share for their Class A Stock and $4.18 per share for their Common Stock. These amounts were to be made available in two ways. The first way was to be an offer to purchase all the shares of the public stockholders at prices in those amounts. The second way was to make the same amounts available, in the dissolution and liquidation of the corporations, to such of the public stockholders as had not accepted the purchase offer.

After the expiration of the purchase offer on December 26, 1967, the trustee filed his final report and final account. It appeared therefrom that the purchase offer had been accepted by 382 persons, from whom S & P purchased 7,246 shares or 69% of the 10,450 shares of publicly-held Class A Stock, and 111,094 shares or 79% of the 140,584 shares of publicly-held Common Stock, and that S & P paid therefor $615,814. The total amount allocated to the public stockholders when the merits of the settlement were considered was $806,046 (id. supra, 273 F.Supp. 863, 866–869). There remains for distribution to 268 public stockholders, in the prospective corporate dissolution procedure, a balance of $190,232.

On March 25, 1968, the court made an order and final decree wherein the trustee's final report and final account was approved, the trustee discharged, and possession of the corporate defendants and of their records and assets was revested in the corporate defendants. As at March 31, 1968, the terminal date of the trusteeship, the trustee returned to the possession of the corporate defendants cash, and securities equivalent to cash, totaling $2,255,613 on a consolidated basis. On April 24, 1968, the corporate defendants filed their proposed dissolution plan and made a motion that it be approved by the court.

## I

There was disagreement as to the disposition to be made of such part of the fund remaining for public stockholders as might not be paid out within five years. The defendants urged that any such residue should become distributable to the subordinated stockholders. The Commission took the position that it should be paid to the clerk of the court to be held and disposed of pursuant to the provisions of 28 U.S.C.A. §§ 2041, 2042.

The Commission's view is regarded as the equitable one in the circumstances of this case. The defendants' argument would be more appropriate to a Chapter X proceeding resulting in a reorganization with a surviving corporate entity. The intent of the settlement was that the amounts to be paid to the public stockholders were to be made available to them in the two ways described above, with a time limitation placed upon acceptance of the purchase offer, but with no time limitation placed upon the availability of distribution after dissolution. An established right to a liquidated sum of money should not be cast into forfeiture because the person to whom the right belongs may be long in availing himself of it. Let the pertinent provisions of paragraphs 3.4.1, 3.4.2, and Exhibit C of the proposed dissolution plan be modified accordingly.

## II

The intervenor Sterling Precision Corporation ("Sterling") contended that it had claims against the defendant corporations totaling $368,073. Sterling opposed approval of the dissolution plan on the ground that its effect might be a speedy disposition of all the assets of these corporations, without provision for payment in full of Sterling's claims. A schedule for immediate presentation of proofs of claim by Sterling, and of answer and any counterclaim thereto by the defendant corporations, was agreed upon. It is contemplated that all such claims and counterclaims will be adjudicated in the near future.

## III

Paragraph 3.4 of the dissolution plan provides for payment of "all liabilities of S & P" to be followed by distribution of "all assets of S & P." Paragraph 3.4.2 provides for "payment of known and undisputed liabilities of S & P," to be followed by distribution of its "assets in accordance with the terms of the agreement among the Subordinated Parties and certain other persons, dated August 14, 1967," a copy of which is annexed to the dissolution plan. Paragraph 3.4.3 constitutes a modification of the August 14, 1967, agreement.

At prior stages of the case, the August 14, 1967, agreement was left at large for future explication. Transcript of hearing on September 11, 1967, pages 10–11, 25–27; transcript of hearing of March 25, 1968, page 15. Cf. on contingencies, id. supra, 273 F.Supp. 863, 867–868. At the hearing on the dissolution plan held May 2, 1968, the attorney for the Commission stated (tr. p. 37): "Mr. Jacob: I agree with the fact that the Commission would very much like to see the corporate defendants completely dissolved and liquidated in accordance with paragraph 5 of the final judgment within the 60-day period and distributions made under the August 14th agreement and to the paying agent." The "distribution[s] * * * to the paying agent" mentioned referred to the balance of $190,232 which the dissolution plan requires be deposited with a paying agent for distribution to public stockholders of S & P in the dissolution procedure.

The agreement of August 14, 1967, obviously concerns its signatories. The public stockholders having been fully provided for in cash, the only parties who could be adversely affected by the agreement of August 14, 1967, are those who may assert creditors' claims which the corporate defendants may dispute and choose to ignore in the distribution of their assets under the terms of the agreement of August 14, 1967. It seems, on the basis of the statement made by the Commission's attorney, that the Commission has considered the implications of

the agreement of August 14, 1967, and has approved the agreement. There should be no misunderstanding about it. The court will approve of the dissolution plan, modified to conform to this decision, upon receipt of written confirmation that the agreement of August 14, 1967, has the approval of the Commission. Cf. id. supra, 267 F.Supp. 562, 565–566. Otherwise the matter will be set for further hearing on the merits of the dissolution plan in relation to the agreement of August 14, 1967.

Settle order with above-described Commission's consent.